SO ORDERED: November 29, 2012.



_____
**James K. Coachys
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KAY M. PAGE, | ) | Case No. 02-14503-JKC-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| KAY M. PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 11-50390 |
| | ) | |
| REGISTRAR OFFICE BALL STATE | ) | |
| UNIVERSITY and UNITED STATES | ) | |
| DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT
UNITED STATES DEPARTMENT OF EDUCATION'S
MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on the United States Department of Education's ("the

Department") Motion for Summary Judgment against Kay M. Page ("Page") on her Complaint

against the Department under 11 U.S.C. § 523(a)(8). Having reviewed the Motion and the parties' respective submissions, the Court issues the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. In 1990, Page attended Indiana University-Purdue University at Indianapolis.

2. She transferred to Ball State University in Muncie, Indiana ("Ball State") in 1991 or 1992. Page attended Ball State for four to five years but only completed 65 credit hours. She did not earn a degree.

3. Page then sought further education at Anderson University in Anderson, Indiana for one semester before ultimately discontinuing her education altogether.

4. Page financed her education through various student loans.

5. Page filed a voluntary Chapter 7 petition on August 22, 2002, under Case Number 02-14503-JKC-7.

6. Page scheduled her student loan indebtedness but did not seek an undue hardship discharge of the loans pursuant to 11 U.S.C. § 523(a)(8).

7. Page obtained a discharge on December 11, 2002, and the case was eventually closed.

8. On April 26, 2003, Page signed a Direct Consolidated Promissory Note to obtain a consolidation loan from the United States Department of Education pursuant to 28 U.S.C. § 1078-3 (the "Consolidation Loan").

9. The Consolidation Loan consolidated eleven separate loans issued to Page between 1992 and 1996 under the Federal Family Education Loan Program. At the time of consolidation, nine of the loans were held by United Student Aid Funds, Inc. and were serviced by Sallie Mae, while two of the loans were held by the United States Department of Education and were serviced

by Debt Management and Collection Systems.

10. On August 29, 2011, Page moved to reopen her bankruptcy case. Such request was granted on September 12, 2011.

11. Page then initiated an adversary proceeding seeking an undue hardship discharge of the Consolidation Loan pursuant to 11 U.S.C. § 523(a)(8). As of July 16, 2012, Page owed $27,137.09 under the Consolidation Loan.

## Conclusions of Law

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325, 106 S.Ct. at 2554. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324, 106 S.Ct. at 2553. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec.*

3

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

    3.    The Department's summary judgment motion is premised on the language of Code § 727(b), which provides in relevant part that "[e]xcept as provided under section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief . . . ." The Department argues that the Consolidation Loan is a post-petition debt and that it is, therefore, not subject to discharge under § 727(a) or under the exception to discharge provided–upon a showing of undue hardship–by § 523(a)(8). For the reasons stated below, the Court agrees.

    4.    The parties' dispute requires that the Court determine the continued vitality of the Seventh Circuit's decision in *Hiatt v. Ind. State Student Assistance Comm'n (In re Hiatt)*, 36 F.3d 21, 24 (7th Cir.1994), a decision rendered under a prior version of § 523(a)(8). As explained by the Honorable Thomas L. Perkins in *Ordaz v. Ill. Student Assistance Comm'n (In re Ordaz)*, 287 B.R. 912 (Bankr.C.D.Ill.2002):

> For the first twenty years of the Bankruptcy Code's existence, the student loan nondischargeability provision was divided into two alternative subsections. The general rule, stated in subsection (A), was that student loans were nondischargeable for five years. After five years, they were automatically dischargeable on the passage of time alone. A 1991 amendment lengthened that term to seven years. An exception to the general rule was provided in subsection (B) for those debtors whose financial situation was so dire that they could not hold out until the five (then seven) years elapsed without experiencing undue hardship. Through amendatory legislation effective October 7, 1998, Congress amended Section 523(a)(8) to delete subparagraph (A), leaving undue hardship as the sole basis for discharging a government insured student loan.

*Id*. at 916-17.

    5.    In *Hiatt*, the debtor had consolidated several student loans prior to filing bankruptcy. That consolidation loan generated a dispute as to whether the seven-year period described above

4

began to run when the original loan first became due or, later, when the consolidation loan became due. In deciding that issue, the court stated:

> Section 523(a)(8)(A) provides that the debt relating to a government guaranteed educational loan is not dischargeable until five years after "*such loan* first became due." (emphasis added). The term "such loan" refers in this case to the consolidation loan, which Hiatt concedes is an educational loan within the meaning of section 523(a)(8)(A). Indeed, when Hiatt "consolidated" her educational debt in 1987, she undertook a new loan from the Commission, the proceeds of which were used to repay in full her original educational loans. See 20 U.S.C. § 1078-3(b)(1)(D). The notes on her original loans were cancelled and the debt discharged. The only outstanding debt that Hiatt currently owes to the Commission, therefore, is the new, distinct debt incurred when she took the consolidation loan. Because that loan "first became due" less than five years before Hiatt filed her bankruptcy petition, section 523(a)(8)(A) provides that the debt is nondischargeable.

*Hiatt*, 36 F.3d at 23 (internal footnote and citations omitted). In explaining that conclusion, the court stated further (in the internal footnote omitted above):

> The commission additionally argues that 20 U.S.C. § 1078-3(d) requires that we treat the consolidation loan as a new loan for purposes of measuring the nondischargeability period. Section 1078-3(d) provides that "[l]oans made under this section which are insured by the Secretary shall be considered to be new loans made to students for the purpose of section 1074(a) of this title [which limits total principal amount of new loans to students covered by federal loan insurance]." We need not address this argument because we conclude that, by virtue of its statutorily prescribed operation, *see, e.g.*, 20 U.S.C. § 1078-3(b)(1)(D), the consolidation loan is a new loan creating new debt. . . .

*Id.* at 23, n.2.

  6. As indicated above, Section 523(a)(8) has been amended since *Hiatt*, and the issue of when a loan first became due for purposes of § 523(a)(8)(A) no longer arises. However, whether a debt is a pre- or post-petition debt for purposes of § 727(b) remains a potential issue, and *Hiatt's* conclusion–that a consolidation loan is a new loan under nonbankruptcy law–remains relevant and, in this Court's view, controlling. In light of *Hiatt*, the Court cannot avoid the conclusion that the

Consolidation Loan is a post-petition debt and, as such, is not subject to discharge, regardless of whether Page can successfully show that repayment of the Consolidation Loan amounts to an undue hardship.

7.  In an attempt to defeat that conclusion, Page directs the Court to Judge Perkins' decisions in the aforementioned *Ordaz* and in *Lewis v. Ill. Student Assistance Comm'n (In re Lewis)*, 276 B.R. 912 (Bankr.C.D.Ill.2002). In both *Ordaz* and *Lewis*, Judge Perkins was asked to follow *Hiatt* in determining whether the debtor had a "future inability to repay" a consolidated student loan–the second prong of the "*Brunner*" test for determining undue hardship.[1]  In refusing to follow *Hiatt*, the court stated:

> In light of the 1998 amendment [to § 523(a)(8)], *Hiatt* and other similar opinions, construing statutory language that has been deleted, are of no precedential value. Moreover, since "undue hardship" is not defined in the statute, the issue is no longer one of construing the language of the statute, but rather, is one of construing the meaning of the second prong of the common law *Brunner* test. Specifically, should the inquiry focus on the repayment period of the original loan or of the restructured note, or should the inquiry be limited at all to either loan term? To answer these questions, the Court will look to the history of and purpose behind the undue hardship provision itself as well as that of the *Brunner* test.

*Ordaz,* 287 B.R. at 817; *see also Lewis*, 276 B.R. at 920.

8.  The Court does not categorically disagree with Judge Perkins' logic. For the purpose of determining whether repayment of a student loan constitutes an undue hardship under *Brunner*, the Court agrees that it can examine the entire repayment period of the loan, even if the loan was

---

[1] Courts within the Seventh Circuit follow the three-prong test first articulated by the Second Circuit. in *Brunner v. N.Y. State Higher Educ. Serv's Corp.*, 831 F.2d 395 (2d Cir.1987). Under that test, the debtor must demonstrate by a preponderance of the evidence: (1) that he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made a good faith effort to repay the loans.

consolidated or restructured at some point pre-petition, thereby triggering a new repayment period. In the Court's opinion, this is largely an *evidentiary* issue. However, *Hiatt* remains controlling in determining whether, *as a matter of law*, a consolidation loan is a pre- or post-petition debt for purposes of § 727(b).[2]

9.    Numerous courts have relied on *Hiatt* for this purpose, even since the 1998 amendment to § 523(a)(8). *See, e.g., Educ. Credit Mgmt. Corp. v. McBurney (In re McBurney)*, 357 B.R. (9th Cir.BAP 2006); *Rudnicki v. Southern College of Optometry (In re Rudnicki)*, 228 B.R. 179, 180–81 (6th Cir. BAP 1999); *Grubin v. Sallie Mae Serv'ing Corp. (In re Grubin)*, 476 B.R. 699, 709-10 (Bankr.E.D.N.Y.2012).

10.    As the Department points out, Page is free to file another bankruptcy case that seeks to discharge the Consolidation Loan as an undue hardship. While this may seem an inefficient use of judicial resources, as well as Page's allegedly limited resources, it does not alter the legal conclusion that the Consolidation Loan is a post-petition loan not subject to discharge under § 727(b) in *this* bankruptcy case.

11.    Based on the foregoing, the Court finds that there are no genuine issues of material fact and that the Department is entitled to judgment as a matter of law. The Court, therefore, grants

---

[2] Page also directs the Court to *Smith v. Wells Fargo Educ. Fin. Serv's. (In re Smith)*, 442 B.R. 550 (Bankr.S.D.Tex.2010). In that case, the court treated a loan that has been consolidated post-petition as a pre-petition debt for purposes of §§ 727(b) and 523(a)(8). *Id.* at 556. The court found it noteworthy that Wells Fargo was the lender both before and after consolidation and that no additional advances or material modifications to the loan were made. Id. In so holding, the court stated that the consolidation loan, at least under the facts presented, served as a reaffirmation agreement–a reaffirmation agreement that did not comply with 11 U.S.C. § 524(c). *Id.*

Factually, *Smith* is distinguishable from the present case, at least with respect to those loans–nine of the eleven that were consolidated–in which the Department was not the original lender. But more significantly, it does not appear that the court in *Smith* was bound, as this Court is, by a circuit decision explicitly stating that a consolidation loan is a new loan.

the Department's summary judgment motion. The Court will issue a Judgment consistent with the above Findings of Fact and Conclusions of Law contemporaneously herewith.

###